**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| THE BAR PLAN MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Case No:  1:19-cv-2310 |
| v. | ) ) | |
| KEVIN L. MOYER, MOYER LAW FIRM, P.C., and NANCY LEMEN, | ) ) ) | |
| Defendants. | ) ) | |

**DECLARATORY JUDGMENT COMPLAINT**

COMES NOW, The Bar Plan Mutual Insurance Company, by and through its undersigned counsel, and asks this Court for a declaratory judgment in its favor and against Kevin L. Moyer, the Moyer Law Firm, P.C., and Nancy Lemen for the reasons that are set forth below:

**NATURE OF THE CASE**

1.      The Bar Plan Mutual Insurance Company ("The Bar Plan") seeks a judicial determination of its rights and duties, if any, under a lawyer's professional liability insurance policy that it issued to the Moyer Law Firm, P.C. with the Policy Number 15421-2018, which has effective dates of October 31, 2018 through October 31, 2019 ("Policy").  *See* **Exhibit 1** attached hereto, Policy.

2.      Specifically, The Bar Plan seeks a determination that it owes no duty to defend and/or indemnify Keven L. Moyer ("Moyer") and/or Moyer Law Firm, P.C. ("Moyer Firm") against any demands that their former client, Nancy Lemen ("Lemen") may make related to Moyer and/or the Moyer Firm's representation of her and/or her deceased husband Mark Lemen ("Lemen Claim").

**PARTIES**

3.      The Bar Plan is a Missouri insurance company in good standing with its principal place of business located in St. Louis County, Missouri.

4.      Kevin L. Moyer ("Moyer") is a citizen of Indiana who is licensed to practice law in the State of Indiana.

5.      The Moyer Firm is an Indiana professional corporation with its principal place of business located in Indianapolis, Indiana.

6.      At all times mentioned herein, Moyer acted in his capacity as an agent of the  Moyer Firm.

7.      Nancy Lemen is a citizen of Indiana.

**JURISDICTION AND VENUE**

8.      There is complete diversity of citizenship between Plaintiff and all of the Defendants.

9.      The amount in controversy exceeds $75,000, exclusive of interest and costs.

10.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

11.      This is a declaratory judgment action brought pursuant to 28 U.S.C. § 2201 and Rule 57, FRCP.

12.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**POLICY**

13.      The Moyer Firm is the Policyholder and Moyer is a named insured under the Policy.

14.      The Policy is a "claims made" policy which provides as follows:

      **I.**      **DEFINITIONS** Whenever used in this Policy:

****

D.   **"CLAIM"** means: Receipt by an Insured of a demand for money or services (including the service of suit or the institution of arbitration proceedings) against the Insured from one other than that Insured.

****

## II.   COVERAGE

### A.   PROFESSIONAL LIABILITY AND CLAIMS-MADE AND REPORTED CLAUSE:

The Company will pay on behalf of an Insured all sums, subject to the Limit(s) of Liability, Exclusions and terms and conditions contained in this Policy, which an Insured shall become legally obligated to pay as Damages as a result of CLAIMS (INCLUDING CLAIMS FOR PERSONAL INJURY) FIRST MADE AGAINST AN INSURED DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING COVERAGE PERIOD AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD, THE AUTOMATIC EXTENDED CLAIM REPORTING PERIOD, OR ANY APPLICABLE EXTENDED REPORTING COVERAGE PERIOD by reason of any act or omission by an Insured acting in a professional capacity providing Legal Services.

**PROVIDED ALWAYS THAT** such act or omission happens:

1.   During the Policy Period; or
2.   Prior to the Policy Period, provided that prior to the effective date of this Policy:
     a.   Such Insured did not give notice to the Company or any prior insurer of any such act or omission; and

         b.     Such Insured had no basis to believe that such Insured had committed such an act or omission.

**NOTE:** It is a condition precedent to coverage under this Policy that all Claims be reported in compliance with Section VII. CLAIMS, Paragraph A.

****

III.    **EXCLUSIONS**

**THIS POLICY DOES NOT PROVIDE COVERAGE FOR ANY CLAIM BASED UPON OR ARISING OUT OF:**

****

L.    A Claim against an Insured who before the Policy effective date knew, or should reasonably have known, of any circumstance, act or omission that might reasonably be expected to be the basis of that Claim.

****

IX.    **OTHER CONDITIONS**

A.    **APPLICATION:**

By acceptance of this Policy, all Insureds agree that the representations made in the Declaration Letter and Application (including all supplements) attached hereto and hereby made part of this Policy are true and complete to the best of the knowledge of all Insureds. This Policy is issued in reliance upon the truth of such representations and all Insureds warrant that no facts have been suppressed or misstated. This Policy embodies all agreements existing between the Insureds and the Company and any agents of the Company relating to this Policy.

4

****

15.     The Moyer Firm's application for the Policy asked, "After the inquiry of each lawyer named in the firm,…. Does the firm or any attorney in the firm have knowledge of any incident, circumstance, act or omission, that may give rise to a claim?"

16.      The Moyer Firm did not disclose facts giving rise to the Lemen Claim to The Bar Plan prior to applying for the Policy and did not disclose it in the application for the Policy.

## CLAIM AGAINST THE INSUREDS

17.     In July of 2011, Mark Lemen fell from a roof and broke his right foot.

18.     Dr. Michael Shea performed an open reduction and internal fixation of Mark Lemen's broken bones.

19.     Mark Lemen underwent a subtalar fusion in January of 2012, but the recovery trajectory from the break was not as expected.

20.      After the second surgery, there was a compromise of arterial blood flow to Mark Lemen's right leg which Dr. Shea noted on February 9, 2012.

21.     Dr. Robert McCready, a vascular surgeon, consulted on February 9th and diagnosed severe ischemia from an arterial occlusion of the right lower extremity of Mark Lemen.

22.     A CTA performed on February 10th showed thrombosis in multiple arteries of Mark Lemen's right lower extremity.

23.     Mark Lemen began experiencing respiratory problems and, in addition, had part of his foot amputated.

24.     Moyer reviewed Mark Lemen's medical records over New Year's weekend of 2014.  Moyer met with the Lemens on January 2nd.

25.     Moyer had the Lemens sign a retention agreement the very next day on January 3, 2014.

26.     The retention agreement stated that Moyer would pursue claims against Dr. Shea, Dr. Shea's company, and Dr. McGready [*sic*] on behalf of the Lemens.

27.     Moyer sent a complaint to the Indiana Department of insurance against Dr. Shea and his company, Indy Ortho, on January 2, 2014, to preserve the statute as it expired that day.

28.     However, Moyer never made a claim against Dr. McCready.

29.     The Lemens' suit against Dr. Shea was unsuccessful, because Moyer could not find an expert to testify that Dr. Shea had breached the standard of care.

30.     In July of 2018, Lemen communicated with Moyer to state that the Lemens wanted to pursue a medical malpractice claim against Dr. McCready because one of Mark Lemen's treaters stated that Dr. McCready was responsible for Mark's pulmonary problems.

31.     Moyer wrote back to the Lemens on July 19, 2018.  In Moyer's July 19th letter, he stated that:

(a)     the statute of limitations to sue McCready had expired on February 10, 2014;

(b)     since the statute had passed, the Lemens could not sue McCready;

(c)     if the Lemens got a qualified medical opinion that McCready's breach caused Mark Lemen's injuries, and they can prove it was malpractice for him not to sue McCready, they might have a legal malpractice claim against him, which would be the Lemens' only method to recover monies for Mark Lemen's respiratory problems; and

(d)     they should contact his insurer, The Bar Plan, to make a claim if they obtained the requisite medical opinion that McCready's breach caused Mark Lemen's respiratory problems, and he gave the Lemens The Bar Plan's contact information and information about the Moyer Firm's policy.

32.     On September 26, 2018, Mark Lemen died of acute on chronic hypoxic respiratory failure secondary to end stage chronic obstructive pulmonary disease.

33.     On October 18, 2018, Moyer again wrote to Lemen stating that should she get the requisite medical opinion that someone erred in the care of Mark, and if she therefore wanted to pursue a legal malpractice claim against him, to let him know and he would notify his carrier, or she could notify his carrier directly to make a claim.  Moyer again provided Lemen with The Bar Plan's contact information and information about the Moyer Firm's Policy.

34.     Moyer concluded his October 18th letter to Lemen by stating that the only way for Lemen to recover monies related to Mark Lemen's medical care was to sue Moyer for legal malpractice and noting that the statute of limitations for suing him for malpractice was 2 years.

35.     From February of 2018 onward, Lemen sent Moyer emails expressing dissatisfaction with the results of the representation and also with acts that Moyer took during the representation.

36.     On October 31, 2018, the policy period for Moyer's 2017 Bar Plan Policy ended and the 2018 Policy period started without him having reported a potential claim by Lemen.

37.     Moyer never told The Bar Plan that Lemen potentially had a claim against him despite repeatedly telling Lemen that she might have a claim against him and The Bar Plan for his legal malpractice.

38.     On February 26, 2019, Moyer reported the Lemen Claim to The Bar Plan.

39.     Lemen then made a policy limits demand in the Lemen Claim.

40.      On May 20, 2019, The Bar Plan denied coverage for the Lemen Claim prior to the expiration of the policy limits demand.

## COUNT I
### (Declaratory Judgment)

41.     The Bar Plan re-alleges and incorporates by reference the allegations set forth in Paragraphs 1-40 above as if fully set out herein.

42.     Reasonable lawyers with knowledge of the facts that Moyer and the Moyer Firm had prior to the Policy's October 31, 2018 effective date, would have known that Lemen might make a claim against Moyer for his handling of Mark's medical malpractice claim.

43.     Therefore, there is no coverage under the Policy's insuring clause and/or Exclusion L, which both preclude The Bar Plan from having a duty to defend and/or indemnify Moyer and/or the Moyer Firm as to any claim Moyer knew or should have known Lemen might make prior to the Policy's effective date.

WHEREFORE, The Bar Plan Mutual Insurance Company prays for declaratory relief as follows:

1.     That it owes no duty to defend and/or indemnify Moyer and/or the Moyer Firm as to the Lemen Claim under the Policy's insuring clause and/or Exclusion L;

2.     That The Bar Plan be awarded its attorneys' fees and costs of suit incurred herein; and

3.     That the Court award such other and further relief it deems just and proper under the circumstances.

Respectfully submitted,

LEWIS WAGNER, LLP


*/s/ Dina M. Cox*

Dina M. Cox, Indiana Bar No. 18590-49
Lewis Wagner, LLP
501 Indiana Ave., Suite 200
Indianapolis, IN 46202
Telephone: (317) 237-0500
Facsimile:  (317) 630-2790
dcox@lewiswagner.com
***Attorney for Plaintiff The Bar Plan Mutual Insurance Company***